2016 IL App (1st) 143924

THIRD DIVISION
May 18, 2016

No. 1-14-3924

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| FIRST MERCURY INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CH 28513 |
| | ) | |
| NATIONWIDE SECURITY SERVICES, INC., | ) | |
| DAVID LITT, d/b/a NATIONWIDE SECURITY | ) | The Honorable |
| SERVICES, INC., and CE DESIGN LTD., | ) | Peter Flynn, |
| | ) | Judge Presiding. |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Mason and Justice Fitzgerald Smith concurred in the judgment and opinion.

**OPINION**

¶ 1 This declaratory action involves a "blast fax" insurance coverage dispute and requires us to determine whether the insurer has a duty to indemnify the insured and therefore the assignee of the insured.

¶ 2 In a separate underlying class action lawsuit, the plaintiff sued the insured for sending unwanted faxes, but the parties ultimately settled. The settlement agreement purported to obligate the insurance company to cover the settlement costs of some $4 million even though the

insurance company was not a party to the settlement and had opposed the previous settlement offer. As part of the settlement, the plaintiff in the underlying matter was assigned the insured's rights under the policy. The insurance company filed the present declaratory action asserting the insured and thus the assignee were not entitled to be indemnified under the policy. The parties filed cross-motions for summary judgment in the declaratory action with the trial court ruling for the insurance company. On appeal, the plaintiff/assignee from the underlying class action lawsuit now seeks to obtain insurance coverage so as to recover the $4 million settlement amount. We affirm the trial court's ruling in favor of the insurance company.

¶ 3                                BACKGROUND

¶ 4     Nationwide Security Services, Inc., through David Litt (hereinafter Litt), had a commercial general liability insurance policy through First Mercury Insurance Company that covered both property damage and advertising injury above the deductible amount.

¶ 5     In an underlying matter, CE Design Ltd. filed a class action lawsuit against Litt for sending unsolicited junk faxes, which allegedly violated the federal Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 *et seq.* (West 2006)) and constituted common-law conversion.[1] Litt's business, Nationwide Security, was a private detective agency focusing on family-related matters. The specific unwanted faxes at issue stated Nationwide Security could help "track your spouse or significant other's daily activities" or "locate anyone, anywhere." The faxed sheet showed a cartoon of a woman stating in a quote bubble, "Worrying about where my husband is and what he's doing is just killing me!!" Her friend suggests contacting Nationwide for help. The faxes at issue were allegedly sent via a third-party company, Business to Business Solutions.

---

[1] The complaint also included a count under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2008)), but this count was later dismissed without prejudice.

¶ 6 Under the TCPA, it's unlawful to fax an unsolicited advertisement unless the sender has an established business relationship with the recipient, the recipient consents to such communication, and the advertisement contains an opt-out notice. 47 U.S.C. § 227(b)(1)(C) (2006). The policy behind the TCPA is to preclude the repeated waste of the recipient's ink and paper by unwanted faxes and the unwanted communication to the recipient's home or business, which may qualify as both property damage and an invasion of privacy under certain insurance policies. See *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 27; *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 366-68 (2006); *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795, 803 (2009). To that end, the TCPA provides for a statutory damage award of $500 per fax for the injured party. 47 U.S.C. § 227(b)(3)(B) (2006). The statute specifically allows a private right of action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id*. If the court finds the violation was done willfully or knowingly, the court may in its discretion impose up to treble the amount of damages. *Id*. The underlying lawsuit between CE Design and Litt sought these damages, among others, and is merely one of a panoply of lawsuits that have been filed in state and federal courts across the United States under the TCPA. The parties appear to agree that 3671 people received the fax advertisements. CE Design has not demonstrated that multiple faxes were sent to each of these 3671 individuals, and thus we construe the record as showing 3671 alleged violations of the TCPA.

¶ 7 Litt informed First Mercury of this lawsuit, seeking insurance coverage, and First Mercury assisted Litt in obtaining independent counsel while issuing a "reservation of rights"

due to a conflict of interest. From the start, First Mercury expressed the position that its policy did not cover the underlying complaint.

¶ 8    We thus will detail only the relevant portions of the policy for the purposes of this appeal. As stated, First Mercury's policy covers both property damage and advertising injury in excess of the deductible amount. The "deductible liability" endorsement requires a $500 "per claim" payment for property damage liability and also for advertising injury liability. In the same endorsement, the policy specifically states that "if the deductible is on a 'per claim basis,' the deductible amount applies *** to all damages because of 'property damage' sustained by one person or one organization, as the result of any one occurrence." An occurrence is defined as an "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Property damage is defined as physical injury to tangible property, deemed to occur at the time of the physical injury that caused it. The policy alternatively states that "if the deductible is on a 'per occurrence' basis, the deductible amount applies *** to all damages because of 'property damage' as the result of any one 'occurrence,' regardless of the number of persons or organizations who sustain damage because of that 'occurrence.' " While the policy covers accidental or negligent property damage, it does not cover intentional property damage.

¶ 9    The policy further states that "if the deductible is on a 'per injury basis,' the deductible amount applies *** to all damages because of 'advertising injury' sustained by any one person or organization as a result of any one injury." Advertising injury, for example, encompasses written publication of material that violates a person's right to privacy.

¶ 10    Under the "limits of liability" section, the policy states that each occurrence limit is $1 million and each advertising injury is $1 million, while the general aggregate limit is $2 million. The limits of insurance fix the most First Mercury would pay regardless of the "number of ***

[c]laims made or 'suits' brought *** [or] [p]ersons or organizations making claims or bringing 'suits.' "  The "general aggregate limit" is the most First Mercury would pay for the sum of damages due to property damage (Coverage A) and damages due to advertising injury (Coverage B).  The policy also prohibits coverage for punitive damages, among other such penalties, which we discuss later.

¶ 11    Following initiation of litigation regarding the unwanted faxes in relationship to this insurance policy, Litt and CE Design entered into settlement negotiations.  CE Design demanded $1.8 million and notified First Mercury of the proposed settlement.  First Mercury responded by letter on February 4, 2011, to counsel for Litt.  First Mercury noted the settlement number was apparently derived from multiplying 3671 (the number of successful fax transmissions claimed to have been sent on November 21, 2006, the day in question) by $500 (the statutory award authorized by the TCPA).  First Mercury noted the $500 demand from each proposed class member was significant because the insurance policy provided for a $500 deductible that applied separately to each claim.  Quoting the policy language, First Mercury asserted, "Clearly, the deductible does not apply on a per 'occurrence' basis."  Consistent with earlier communications, First Mercury essentially asserted Litt would need to pay the $500 deductible in the policy as to each claim for an unwanted fax.  According to the settlement calculations, then, First Mercury was not responsible for anything above and beyond the deductible.  Nonetheless, in the letter First Mercury authorized counsel for Litt to offer $10,000 to settle the lawsuit so as to "bring this matter to a timely resolution."

¶ 12    First Mercury subsequently filed a declaratory judgment action seeking a determination that it was not responsible for covering any obligation arising from the underlying lawsuit.  First Mercury again asserted it had no insurance coverage obligation above and beyond the deductible.

¶ 13    Despite First Mercury's declaratory action and expressed reservations, Litt and CE Design went on to settle the unwanted fax lawsuit under court approval for approximately $4 million, to be enforceable only against First Mercury.  Litt assigned to the class his rights and claims under the insurance policy.  The settlement expressly noted that Litt could not pay $500 for each of the faxes and the only "meaningful source of recovery" was from First Mercury.  As a result, CE Design stepped into the shoes of Litt and thus could have no greater rights than Litt to coverage under the policy and indemnification.  In approving the settlement, the trial court noted that First Mercury had declined to settle and had sued to void coverage.  The court nonetheless found the settlement reasonable.

¶ 14    On the heels of the settlement, First Mercury and CE Design filed cross-motions for summary judgment and responsive motions in First Mercury's declaratory action case.  The trial court ultimately granted First Mercury's summary judgment motion.  This timely appeal followed.

¶ 15                                    ANALYSIS

¶ 16    Summary judgment is properly granted when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2014). Where parties file cross-motions for summary judgment, they agree that the case presents only questions of law, and they invite the trial court to decide these legal questions on the basis of the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Our standard of review in such a case is *de novo*. *Id*. ¶ 30.  The construction of an insurance policy, which presents a question of law, is likewise subject to *de novo* review.  *Swiderski Electronics, Inc.*, 223 Ill. 2d at 360.

¶ 17                    *Estoppel, Insurance Defenses, and Appellant's Brief*

¶ 18    As a preliminary matter, we address CE Design's argument that First Mercury breached its duty to settle in good faith and therefore is estopped from contesting coverage. Neither Litt nor CE Design filed a complaint or countercomplaint alleging a cause of action for bad faith refusal to settle. See *Haddick v. Valor Insurance*, 198 Ill. 2d 409, 416 (2001) (noting the elements of the cause of action). Such an argument is therefore not properly before this court. See *In re Estate of Lis*, 365 Ill. App. 3d 1, 13 n.3 (2006) (cause of action not alleged in the trial court cannot be raised on appeal).

¶ 19    Although unclear, CE Design also appears to argue First Mercury breached its duty to defend Litt in the underlying lawsuit and so is estopped from asserting defenses to coverage. In the next breath, however, CE Design concedes First Mercury provided a defense to Litt via independent counsel and investigated the claim under its obligation. The estoppel doctrine only applies where an insurer has breached its duty to defend. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 151 (1999). Where, as here, the insurer adequately informs the insured that it's proceeding under a reservation of rights, identifying the policy provisions that may preclude coverage, and the insured accepts defense counsel provided by the insurer, then the insurer is *not* estopped from asserting policy defenses. See *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 20. First Mercury thoroughly discussed the reservation of rights, provided Litt with independent counsel, and then filed the present declaratory action. See *id.* ¶ 22. First Mercury is not estopped from asserting coverage defenses.

¶ 20    We likewise reject CE Design's related argument that First Mercury breached its "contractual duties" and so must indemnify the underlying judgment. CE Design relies on *Delatorre v. Safeway Insurance Co.*, 2013 IL App (1st) 120852, in arguing an insurer may be liable for damages beyond the policy limits. In *Delatorre*, however, the court found the

insurance company breached its duty to defend because the attorney retained on behalf of the insured in a negligence lawsuit did very little in the way of actually defending the insured. *Id*. ¶¶ 22, 26. Again, here, there was no breach of a duty to defend, rendering *Delatorre* demonstrably inapplicable. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (points not argued are waived).

¶ 21 This brings us to another point we must make regarding CE Design's brief. In the first 16 pages of a 49-page brief, wherein CE Design argues its damages were covered, CE Design largely neglects to even quote the relevant insurance policy or record in this case, thus violating Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016) (argument must contain contentions of the appellant and reasons therefor, with citation to authorities and pages of record relied on); *Lopez v. Northwestern Memorial Hospital*, 375 Ill. App. 3d 637, 638 n.1 (2007) (party's failure to comply with Rule 341 is grounds for disregarding arguments on appeal based on an unreferenced statement of facts). Throughout its entire brief, CE Design also makes contradictory arguments, factual assertions that lack record support, and in general fails to provide explanation for why it raises certain points in argument. However, a reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented, and the appellate court is not a depository in which the appellant may dump the burden of argument and research. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 855 (2007). It is not the job of this court to scour the record and make arguments for the appellants, as our docket is full and noncompliance with the supreme court rules does not help us resolve appeals expeditiously. *In re Estate of Parker,* 2011 IL App (1st) 102871, ¶ 47. Thus, to the extent this order does not address certain arguments or issues, it is because they are so poorly set out that they fail to merit further attention and are subject to waiver. *Id.*; see also *Express Valet, Inc.*, 373 Ill. App. 3d at 855.

¶ 22                    *Insurance Coverage In Light of the "Per Claim" Deductible*

¶ 23    With these admonitions in mind, we turn to the merits of the appeal.  CE Design argues

in the main that First Mercury was contractually responsible for the $4 million dollar settlement

between CE Design and Litt.  First Mercury responds, as it did before the trial court, that the

policy did not cover the complaint.

¶ 24    Where, as here, the insurer surrenders the defense to independent legal counsel because

of a conflict of interest, it thereby relinquishes control over the litigation, and a reasonable

settlement by the insured should not prevent an action for or in opposition to indemnification.

*Myoda Computer Center, Inc. v. American Family Mutual Insurance Co.*, 389 Ill. App. 3d 419,

425 (2009); see also *Central Mutual Insurance Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st)

123339, ¶ 52 (where insurer neither breaches its duty to defend nor controls the defense, insurer

can contest both the reasonableness of the settlement and whether the underlying claims are

covered).  As a result, First Mercury's declaratory action opposing indemnification for the

underlying suit is properly before us.

¶ 25    An insurer's duty to defend is much broader than its duty to indemnify its insured.

*Shelborne*, 389 Ill. App. 3d at 799. The duty to indemnify arises only when the insured becomes

legally obligated to pay damages in the underlying action that gives rise to a claim under the

policy. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.,* 197 Ill. 2d 278, 293 (2001).  Once

an insured has incurred liability as a result of the underlying claim, an insurer's duty to indemnify

arises only if the insured's activity and the resulting loss or damage actually fall within the

policy's coverage. *Johnson v. State Farm Fire & Casualty Co.*, 346 Ill. App. 3d 790, 795 (2004).

While the insured bears the burden of proving a claim is covered, the insurer must then prove

that the loss was limited or excluded by a contract provision.  *Travelers Personal Insurance Co.*

*v. Edwards*, 2016 IL App (1st) 141595, ¶ 22. Moreover, an insurance contract is not a guarantee of indemnification for every dollar of every loss. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Limited*, 223 Ill. 2d 407, 436 (2006).

¶ 26 To address the indemnification matter, we turn to the language of the insurance policy itself. The general rules governing the interpretation of contracts also govern the interpretation of insurance policies. See *Lay*, 2013 IL 114617, ¶ 24. As such, a court's primary objective in analyzing an insurance policy is to ascertain and give effect to the parties' intentions as expressed by the policy language, which we construe in its plain and ordinary meaning. *Swiderski Electronics, Inc.*, 223 Ill. 2d at 362-63. We view the policy as a whole so as to give effect to every provision if possible. *Id.* at 362. As a result, if the policy language is unambiguous, generally the policy will be applied as written. *Lay*, 2013 IL 114617, ¶ 24.

¶ 27 Here, the policy explicitly states that the property damage and advertising injury deductible apply respectively "per claim," for example, where the property damage is "sustained by one person or one organization" due to "any one occurrence" and, where the advertising injury is "sustained by one person or one organization" due to "any one injury." The complaint in this case alleged that the damage arose not just when the blast fax was sent, but significantly when it was received, *i.e.*, when the fax machine was used without authorization, its ink wasted, and the individual recipient's privacy invaded. Given the facts of this case and the policy at issue, to the extent any property damage or advertising injury was incurred, it was incurred when each individual received an unwanted fax on an individual basis. This is consistent with the language of the TCPA, itself, which imposes the $500 penalty per violation (or per fax). See 47 U.S.C. § 227(b)(3)(B) (2006). Thus each recipient in this case would have a possible claim for property damage due to the sending of the fax (depending on whether the fax was accidental and

thus an occurrence covered by the insurance, which we discuss later)[2] and also for advertising injury. The "per claim" language in the policy, read in light of the factual context of this case, is not ambiguous as CE Design argues.

¶ 28    We therefore reject CE Design's argument that the policy's advertising injury deductible provision is uncertain. CE Design notes the deductible endorsement refers to a $500 "per claim" deductible for advertising injury, but then immediately below refers to the deductible on a "per injury" basis. Reading the plain language of the insurance policy in the context of the underlying TCPA litigation, an advertising injury to a person or organization and the damages that flow from that injury give rise to a third-party claim against the insured. Indeed, words are only ambiguous, and hence must be construed against the drafter, if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning, and a court will not search for ambiguity where there is none. *Swiderski Electronics, Inc.*, 223 Ill. 2d at 363.

¶ 29    We likewise reject CE Design's argument that the word "claim" is ambiguous. CE Design argues it could be construed as a claim asserted by the insured to the insurance company or by a third party, and that we must interpret the policy in favor of CE Design as a result of any ambiguity. "Claim" is not defined in the insurance policy, but Black's Law Dictionary says it is "[a] demand for money, property, or a legal remedy to which one asserts a right." Black's Law Dictionary 281-82 (9th ed. 2009); see also *Swiderski Electronics, Inc.*, 223 Ill. 2d at 366 (turning to dictionary definitions where words are undefined in a policy). Given the plain language of the word, and read in context of the deductible policy, claim refers to a demand for money or legal

---

[2] As the trial court noted, "if the faxes were sent negligently, they may be covered as property damage, but would not give rise to treble damages under the TCPA, making the $4.2 million size of the Settlement unreasonable; on the other hand, *** if the faxes were sent knowingly, they could not be covered property damage, but might implicate treble damages under the TCPA."

remedy by a third party against the insured for damages caused by the insured's conduct. That is, the deductible endorsement ties the term "claim" to the damage or injury "sustained by one person or one organization," as opposed to the insured. See *Western Heritage Insurance Co. v. Asphalt Wizards*, 795 F.3d 832, 838-39 (8th Cir. 2015); see also *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 774-75 (11th Cir. 2011) ($500 "per claimant" deductible applied to damages for advertising injury). Similarly, "claim" also cannot simply refer to the class action lawsuit, such that only one deductible applies to the entire class. This is because the class action consists of alleged damages sustained by many individuals or organizations. See *Western*, 795 F.3d at 839. Claim likewise does not mean "cause." CE Design's interpretations are contrary to the policy language. Because each party in this class action lawsuit allegedly suffered property damage, advertising damage, or both, each party in the class action must necessarily assert his or her own claim against the insured, to which a $500 deductible applies respectively on a per person or per organization basis.

¶ 30 Thus far we have established only that coverage for property damage and advertising injury is possible on a per claim basis and with the deductible applying.[3] As the trial court observed, however, CE Design has not fulfilled its burden of establishing that there is coverage above and beyond the deductible. The trial court wrote CE Design must "prove that the 'primary focus' of the Settlement is for covered damages (not just covered events, but covered dollars)," which for the following reasons CE Design has failed to do. *Cf. Federal Insurance Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 289 (2009) (allocation in underlying settlement between covered and noncovered claims unnecessary where plaintiff showed "primary focus" of

---

[3] CE Design effectively concedes our "per claim" conclusion when later in its brief CE Design argues there were "3,671 occurrences."

12

underlying litigation was covered loss and it settled in reasonable anticipation of that litigation). In other words, the settlement cannot convert an uncovered claim into an otherwise covered one.

¶ 31                    *Aggregate Limits of Insurance*

¶ 32    CE Design argues that the $2 million aggregate limit applies in this case because there was both property damage and advertising injury. This is significant because the policy provides that in the event the aggregate limit is implicated, the insured's deductible will *not* be subtracted from that limit. Thus, even if the insured has to pay, say a $500 deductible, he still has $2 million more of insurance coverage. This provision thus benefits the insured. The policy alternatively states that individual limits of insurance (like the $1 million limit for advertising injury) will "be reduced by the amount of such deductible." This means that in the event advertising injury occurs, and the insured must pay a $500 deductible, he will only have $999,000,500, because the individual limit is reduced by his deductible. This latter provision benefits the insurance company. CE Design argues for coverage of at least $2 million of the settlement plus any accompanying interest. That sum would thus be unaffected by any deductible for which the insured, and thus CE Design, was responsible.

¶ 33    We reject this argument out of hand because we conclude the record shows there was no property damage and the aggregate limit is not implicated. The policy states it does not cover property damage that is "expected or intended from the standpoint of the insured." According to the evidence in this case, it's hard to reach any other conclusion but that Litt expected and intended to send the faxes at issue and that the natural result of sending them would be the use of toner and resources and, thus, property damage. In the deposition of Caroline Abraham, running Business to Business Solutions, she testified she primarily sent advertising faxes for her business, and that on the day in question, she sent the fax for Litt with his approval. She also

described evidence showing Litt had done fax advertising earlier through the company. In another deposition from Litt, Litt testified he was the sole officer, shareholder, and employee of Nationwide and authorized person for its bank account. He testified he did not recall utilizing a fax service or authorizing transmitting a fax advertisement, nor did he recall the check showing his name and that was written to Business to Business Solutions. Although CE Design argues Litt *thought* he had authorization to send the faxes, making his actions arguably negligent or accidental, CE Design does not point to anywhere in the record supporting this assertion. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). The assertion also contradicts Litt's deposition testimony, wherein he essentially denies any recollection of sending faxes. Based on the aforementioned evidence, we believe only one reasonable inference can be drawn from the facts, and that inference establishes property damage was either expected or intended from the insured's standpoint. *Cf. Eakins v. Hanna Cylinders, LLC*, 2015 IL App (2d) 140944, ¶ 13 (summary judgment motion should be denied if reasonable people could draw different inferences from the undisputed facts). That excludes property damage coverage.

¶ 34     Moreover, as the trial court noted, " 'aggregate' plainly applies only if multiple coverages are, in fact applicable. Relying on the Illinois Supreme Court's decision in *Lay*, the court held that allowing for multiple coverage would create a "double recovery for the same injury, since a recovery of the $500-per-fax TCPA statutory damages necessarily compensates the fax recipient for any ink-and-toner conversion damages as well." In *Lay*, the Illinois Supreme Court held "[t]he manifest purpose of the TCPA is remedial and not penal." 2013 IL 114617, ¶ 30. The court acknowledged the actual losses (*i.e.*, loss of paper and ink and the inconvenience) associated with individual violations of the TCPA are small, but held the $500 sum also provided incentive for private parties to enforce the statute. The court reasoned the set $500 statutory

14

award "clearly serves more than punitive or deterrent goals." *Id*. ¶ 32. CE Design has not demonstrated that the single incident of one blast fax sent to and received by 3671 people should garner more than a $500 damage award per person for the TCPA statutory violation. Based on the foregoing, the facts of this case implicate the advertising injury limit of $1 million.

¶ 35    We break the math down as follows. The settlement was specifically for $4,124,597.70. CE Design now argues this amount is "unallocable."[4] That is, it's impossible to determine what sum was associated with what claim and we should *ergo* leave the settlement number as is, holding First Mercury liable for payment. We disagree, as this position is contrary to that taken before trial proceedings. See *G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130593, ¶ 44 (noting a party cannot take contrary position in declaratory action so as to obtain insurance coverage for previous settlement). In its motion to approve the settlement, CE Design explicitly stated the judgment amount was within "the statutory damages that could be awarded" and repeatedly noted the settlement numbers were based on the TCPA (not the common-law conversion claim).[5] Consistent with representations before the court handling the settlement and the court handling the declaratory judgment action, the amount represented $500 (the TCPA award) x 3671 (the faxes received) = $1,835,500. In the settlement documents, CE Design noted the full treble damages could potentially be awarded based on the facts in this case, but then apparently opted for double damages. The settlement court approved imposing $1000 for violating the TCPA perhaps willfully or knowingly, adding another $1,835,500. Thus, the total award was $3,671,000, plus an agreed amount of 5% interest or 251.44 per day for 1804 days, equaling $453,597.76. That left a grand total of $4,124,597.70.

---

[4] As First Mercury notes, CE Design takes the contradictory position that this court should allocate the judgment for the prejudgment interest award.

[5] Were we to conclude property damages applied in this case, we also agree with the trial judge in the declaratory action determination that damages for conversion were swallowed by the $500 damage award under the TCPA and any conversion damages would have been simply duplicative.

¶ 36    Given the trial court's conclusions on summary judgment, which we agree with, each of the 3671 fax recipients was entitled to $500 in damages under the TCPA.  Again, $500 (the TCPA award) x 3671 (the faxes received) = $1,835,500.  That amount not only represents the damages but also represents the $500 per-claim deductible for advertising injury.  As the trial court stated, the $500 deductible and the $500 compensatory statutory damage available under the TCPA "match precisely" such that "First Mercury's deductible equals First Mercury's maximum exposure for compensatory damages under the Policy."  As a result, the insured and thus CE Design is responsible for paying $1,835,500.  Because the deductible of $1,835,500 is above the $1 million advertising injury limit, First Mercury is not obligated to indemnify the insured or CE Design for the costs of their settlement.

¶ 37                    *Punitive Damages Under the Policy and Interest*

¶ 38    We also conclude that even with the limits of insurance aside, CE Design cannot overcome First Mercury's exclusionary provisions to establish it is entitled to any money.  As the trial court noted, "the Settlement included $1,000 per sent fax.  Of that, $500 constituted the TCPA compensatory damages.  The remaining $500 is part of the treble damages allowed under the TCPA."  Again, the insured is responsible for the $1,835,500 deductible, but any doubling or trebling of the $500 statutory award is excluded by the policy, which prohibits "[a]ny claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages." *Cf. Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d at 776 (TCPA treble damage award not barred by exclusion in policy, which disavowed payment for "costs, interest, or damages attributable to punitive or exemplary damages" (emphasis omitted)

16

and given that treble damages can sometimes be punitive depending on state law and statute at issue). *Lay* at least suggests that doubling or trebling the TCPA $500 statutory award constitutes a punitive measure. The court in *Lay* noted, "the fact that Congress provided for treble damages separate from the $500 liquidated damages indicates that the liquidated damages serve additional goals than deterrence and punishment and were not designed to be punitive damages." *Lay*, 2013 IL 114617, ¶ 33. However, even if *Lay* did not stand for that proposition, we believe the exclusion clearly bars coverage for any doubling of the $500 award, since the exclusion prohibits both penalties and damages that are a multiple of compensatory damages. See *Central Mutual Insurance Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶ 66 ("to the extent the statute provides for the trebling of damages for willful violations, it clearly imposes a penalty"). That is, the policy excludes amounts above the $1,835,500 statutory damages ($500 times 3671 faxes).

¶ 39    The exclusion likewise bars any prejudgment interest, as does another section in the policy. The section describing "supplementary payments" says for "any claim we investigate or settle, or any 'suit' against an insured we defend," First Mercury will pay "[p]rejudgment interest awarded against the insured on that part of the judgment we pay." As determined, First Mercury has no obligation to indemnify CE Design/Litt, and so First Mercury has no obligation towards prejudgment interest.

¶ 40    We reach the same conclusion regarding postjudgment interest. The section describing "supplementary payments" also says for "any claim we investigate or settle, or any 'suit' against an insured we defend," First Mercury will pay "[a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance." Since there was

no judgment within the applicable limit of insurance, First Mercury is not obligated to pay postjudgment interest under this provision. Moreover, an insurer is not responsible for postjudgment interest related to a class action settlement under the TCPA. *Eclipse Manufacturing Co. v. United States Compliance Co.*, 381 Ill. App. 3d 127, 141-42 (2007).

¶ 41　　Litt also argues the defense costs "diminish the potential impact of the deductible" and characterizes this as an issue of fact that remains unresolved. In support of this argument, Litt cites only to a footnote in First Mercury's summary judgment motion. In that footnote, First Mercury explains that the erosion of any per-claim deductible by defense costs would be "negligible." Litt does not cite any other part of the record or cite any law with regard to this claim and has therefore waived it. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); see also *Express Valet, Inc.*, 373 Ill. App. 3d at 855.

¶ 42　　Having disposed of the case, we need not reach the parties alternative arguments as to the reasonableness of the settlement.

¶ 43　　　　　　　　　　*Policy Reasons Supporting Affirmance*

¶ 44　　Finally, we must express our concern with the policies implicated by the proliferation of TCPA class actions. Indeed, these cases are not about how insureds face ruinous liability for their conduct in sending unsolicited fax advertisements or compensating members of the class. Rather, they have everything to do with compensating the lawyers of the class.

¶ 45　　We observe at the outset that the attorneys' calculation of damages in TCPA class actions is disingenuous. Specifically, the calculated damages (# of faxes x $500 per fax (or treble that) = liability) do not correspond with the number of class members who are likely to join the class and benefit from the litigation. That is, attorneys in class action TCPA cases are acutely aware that only a handful of persons or entities who receive the offending fax transmissions will

18

actually come forward to pursue a claim. The low response rate can also perhaps be attributed to the method of reaching these class members, which is via yet another unsolicited fax or mailing which they will in all likelihood disregard as "junk." Class attorneys, however, all too often aim to solidify a fund via the settlement negotiations in order to satisfy their hefty fee petition rather than their fiduciary obligations towards safeguarding class members' interests.

¶ 46    This case is typical of the TCPA class action cases. Here, for example, putative class members received notice of the settlement more than five years after receiving the unsolicited fax, making the likelihood of filing a claim very low. In this appeal, which consists of a 12-volume record and 120 pages worth of briefs that raise a multitude of arguments, the only ones who stand to reap any significant benefit from a favorable outcome are the attorneys for the class. To avoid this charade, courts in the underlying class actions should insist that class attorneys fulfill their obligations to absent class members by going forward with the claims process, with the caveat that allowed claims will only be satisfied from the proceeds of insurance, if and when such proceeds are available. Then, after the claims deadline has passed, both the court in the underlying class action lawsuit and a court considering the insurance coverage dispute for such claims (not to mention insurers) will be able to assess the insured's actual exposure to liability for unsolicited faxes – a sum which would predictably be a fraction of the settlement amount. And, having ascertained the real benefit of the settlement to claiming class members, a court can more realistically address the fee to which class counsel is entitled.

¶ 47                                CONCLUSION

¶ 48    Based on the foregoing, we affirm the judgment of the circuit court granting First Mercury summary judgment in its declaratory action case and ruling that it has no duty to pay any part of the payments called for under the class action settlement.

¶ 49    Affirmed.